May it please the Court, this is a case about simple statutory construction. And this is where the magistrate judge in this case got it wrong. The ADA in its actions provide that no covered entity shall discriminate against a qualified individual with a disability in various different things including benefits, terms, privileges of employment, and that a qualified individual of a person with a disability is a person who can do the essential functions of the job with or without reasonable accommodation. And in this case, there's no question that Mr. Beasley is a disabled person and he's a qualified individual with a disability. And so I'll just tell you from my perspective, the hurdle you need to overcome is not the precedence and Lucas and LaChance, where we say that an accommodation can qualify as reasonable and thus be required by the ADA only if it enables the employee to perform the essential functions of the job. What do we do with those precedents in light of your argument? Well, when you look at those cases, it actually goes to two prongs. It goes to, because there's actually in the statutory text, there's a prong that once you show the person is a qualified individual who can perform the essential functions of the job, then there's a third prong that says you can't discriminate against that qualified individual who can perform the essential functions of the job unless you can show it's an undue burden. And so if we're going past step two of the prong, that they can do the essential functions of the job with or without reasonable accommodation, why does the statute provide that third prong which allows you to say that if this person is qualified, you can discriminate against them by denying them reasonable accommodation? Judge Brasher is asking about the second prong. It's not the third prong. You've made a point about the causation standard. We can talk about that. But Judge Brasher's question goes to something else, which is that for an accommodation to be reasonable or to deny a reasonable accommodation, it has to go to an essential function of the job. Right, but the statute doesn't say that. That's actually contrary. Yeah, I get that. I mean, I find that very persuasive. But what do we do about our precedents that seem to say that, even if the statute doesn't? So the two precedents that are cited never went to the third prong. If you look closely at the... Counsel, this is not a causation case. I mean, it is a causation case, but the issue that Judge Brasher is asking about and we're talking about is not the third prong. That goes to Holly and another issue you've raised. We're talking about the second part, which is to be a reasonable accommodation that the employer is required to give, it has to go to an essential function. And at least in Lucas, it sure seems to me as if we decided exactly that. So I agree with that. To meet prong two as a qualified individual with or without accommodation, those accommodations that you need to analyze for step two need to go to the essential functions of the job. Perfect. We agree. That's fantastic. We agree as to that. So what evidence is there that as to the four things you pointed to, the morning meetings, the forklift training, the picnic, and disciplinary review go to essential functions of the job of someone who stocks the shelves at the O'Reilly Warehouse? And I think this is where it's very important to say that there's no dispute that Mr. Beasley meets prong two, that he can perform the essential functions of the job. Right. The four things I mentioned, how are those essential functions of the job? Okay. So our first, so I would answer your question in two ways. One is, it is a part of the essential functions of the job. If you were to find that these things are benefits, privileges of employment in terms of... Except that you have conceded, and I think you rightfully do, that Lucas focuses on the essential functions of the job. So again, you pointed to four things. I've laid them out for you. Which of those four things are essential functions of the job of someone who shows up one in the morning, restocks the mufflers on the shelf, and leaves at 5 a.m. or 6 a.m.? Which one of those things? So for purposes of this argument, I'd say none of them are the essential functions of the job. Well, that seems to be a problem. That seems to be a problem for you that's independent of the holly and causation issue. So here's why it's not a problem. If I see people who are the essential functions of the job, and I'm not going to speak about that, then you go to the third prong, which none of the Eleventh Circuit cases have ever gone to the third prong, because they always decide the case... I know, but if he was reasonably accommodated, meaning if he got an accommodation for the essential functions... But that's how the statute only protects, if you can prove you're a qualified individual with a disability. And that's what we're trying to explain. I have to say I'm confused, because I understand the causation issue with the adverse employment stuff. We're not... Let's put that aside for the moment. We're only talking about whether a reasonable accommodation has to go to an essential function of the job. And let's put it this way. Let's say that he wants a tissue to sneeze, and he needed an interpreter to be able to get a tissue. Under no stretch of the imagination is getting a tissue an essential function of his employment, right? We all agree with that? We agree. Okay. So if your claim was he asked for an interpreter to get a tissue, and he didn't get one, then you would have no claim, right? Correct. So what you have asked for, as I understand the claim, is he asked for an interpreter for morning meetings, he asked for an interpreter at the forklift training, he asked for an interpreter for the company picnic, and he asked for an interpreter at disciplinary interviews or sessions. Which one of those goes to an essential function of the job? What we're saying is that those are the conditions, privileges of employment. And it seems like, and I mean, you know, I just think the problem is it seems like our case law has more or less just read that out of the statute, right? How do we get around these cases that we have that say that the only reasonable accommodations that have to be provided are ones that allow you to perform the essential functions of the job? And I think that's the problem here is that it's as to prong to. Okay, let's hear from the EEOC, and then we'll hear you back on rebuttal, okay? Thank you. No, no, I think we're going to hear from the EEOC first, and then you're going to be able to respond. Otherwise, you wouldn't be able to respond to anything you're, I guess you can defer and give them the last word if you want. Good morning, Your Honor. It's Chelsea Sharon from the EEOC as amicus. If I could jump right in to speak about the sports case law. You might, it might be helpful to focus on the issue that Judge Bratcher and I have been asking about. That was my intent, if you'll allow me. And I apologize in advance. It might be a long-winded answer, but respectfully, I think that that's a misreading of what this court has said in Lucas, Lachance, and Hawley. So the proposition that an accommodation is reasonable only if it enables essential job functions means that if the individual remains unable to perform essential job functions even with the accommodation, then that accommodation is not reasonable because it's ineffective. So in other words, the accommodation must be sufficient to enable performance of essential job functions in order to be reasonable, but it doesn't need to be necessary for performance of essential job functions. So in Lucas, we went through, so there, the employer, the employee there gave a bunch of things for what he should have been promised, including, I want you to restructure the job. And an opinion well written by someone on this panel said you can't really rewrite the job because what is required is those things that are essential to the job. And if something is essential to the job that you're trying to read out, that's not a reasonable accommodation. That precisely supports my point, Your Honor. It comes in the context of saying that Lucas is unable to perform the essential job functions even with the accommodation. So the accommodation is insufficient. It's ineffective. I know, but in the course of saying that, we, it seems to me a holding, because the only way that the conclusion makes sense is the holding that a reasonable accommodation something, something is only reasonable if it goes to the essential functions of the job. So in the course of reaching the conclusion we did, we said that, which seems to make it an essential part of the Court's decision. No, I think it's essential. I just think it stands for a slightly different proposition, which is that it must be sufficient. The employer is not required to eliminate an essential job function. So if the accommodation doesn't get the employee to the point where they perform the essential job function, it's insufficient to do that. And if I could just point to how Hawley frames it. So I'm just going to read briefly. So it quotes that language from Lucas and Lachance. And then it says, it distills that to say, if the individual is unable to perform an essential function of his job, even with an accommodation, he is by definition not a qualified individual and therefore not covered under the ADA. In other words, the ADA does not require the employer to eliminate an essential function of the plaintiff's job. So your point, I think, whoa, that was loud. I think your point is that those cases, Lachance and Lucas, were about disabled individuals who were not, who sort of failed at step one, who were not eligible. Here we have someone who is performing the essential functions, is totally eligible. And so that distinguishes Lucas and Lachance. And you know, this is not a step one case. And so we don't have to follow Lucas and Lachance. Sort of, Your Honor, but I guess my point is that saying that an accommodation is only reasonable if it enables performance of essential job functions means that it has to be effective. That's an obvious proposition. So if an employee is coming in and saying, listen, I could do my essential job functions if you would only accommodate me in X respect. And the court said, well, even if we do that, like in Lucas, you're still not going to be I'm still having trouble, though. If an accommodation does not go to an essential job function, then how is it at all, how is it all that an employee must be able to do the job with or without? If it's not an essential part of the job, then an employee is able to do it with or without the job, right? Take my tissue example. There's no, at least with regard to this case, there's no way that that is at all relevant to anything to do with the job. So if he had asked for that accommodation, it would be completely irrelevant because it's not relevant to the essential functions of the job, right? It would be irrelevant to the essential functions of the job, but that presupposes that that's the only permissible purpose. So like, what do you do, for example, with an employee who's diabetic, who can perform the job perfectly fine, but is asking for an accommodation to be able to check her blood sugar? That doesn't go to essential job functions. It doesn't. But if the employee can't function, let's say it's a typist, an employee can't function without checking his or her blood sugar, then that would go to the essential functions of the job. Here, the problem, and you have nothing to do with the record here, we are just arguing the legal principle, but the record here, you heard the plaintiff's counsel here, doesn't go to anything to do with the job of stocking. So yes, he is disabled, yes, he needs to be accommodated for essential functions of the job, but for other stuff, how does that fit within our case law? Your Honor, the point, though, is that I just believe that the case law does not stand for that proposition. I think that the proposition that it must be sufficient to allow performance of essential job functions where you can't do the job without an accommodation just is a different proposition than saying that you have to be unable to perform the essential job functions. And we know from the statute that you can be eligible even if you do not, without an accommodation, who can perform functions without an accommodation is qualified. And I would just respectfully, I see that my time is up, if I could just say one other thing. I direct Your Honors to the First Circus decision in Bell, where the employer made a similar argument and said that the jury instruction there that said that an accommodation must enable performance of essential job functions, the employer said that means that the employee must be unable to perform essential job functions without the accommodation. And the First Circuit said no. The enables language, which is the language that we're dealing with here, that simply stands for the well-settled rule that the accommodation must be effective. It says nothing about whether the employee must be unable to perform essential job functions without the accommodation. So just direct you to that language. And I see that my time has expired. I appreciate the extra time and thank you for having us. Thank you. May it please the Court. My name is Mike Strasavage. I represent the Appealee O'Reilly Auto Parts in this case. So, counsel, I'm going to tell you where I'm at. I'm going to assume you're right, you're reading the law as correct, both in how we require, we seem to require that an accommodation go to the essential functions of the job and that there needs to be what I'll use as an adverse employment action, but really is something greater than that, but that it needs to go to an essential function of the job. There seems to be some evidence in the record to suggest that at least with regard to the disciplinary hearings, the disciplinary sessions, that those are an important part of the job. And I'll refer you to some deposition testimony. So, if we take a look at Mr. Lutton's deposition, which is at 51-7, at ECF page 5, but depo page 28. I'm not a fan of the four page depos, but that's a separate problem. He was asked about the disciplinary sessions and Mr. Lutton testified that they were really important for the success of employees, that with the coachings, a supervisor sits down with a team member and coaches them on what's going on. I mean, we want to change behavior because the behavior is bad and needs improvement. We want to change it. And then according to Mr. Lutton, he also said it, this is at page 6, depo page 30, that it's an important meeting for both sides to fully participate in. And then Ms. Munderlin, who's the HR business partner, testified also that it's an important part of the employment process. That's a docket entry 51-8 at ECF page 5. So if you have supervisors and important people in the company saying that this is an important part of the job, why is that not, at least for summary judgment purposes, create a genuine dispute as to whether at least that component is an essential function of one's job? Thank you, Your Honor. And I think as to the question that I think the court was hitting around of the essential things that the employer establishes, such as a written job description, while not conclusive, are entitled to deference. And we have a written job description here in the record that describes exactly what the job that Mr. Beasley obtained. Let me jump in. There's no doubt you have evidence to support your position that the four things that I've mentioned, and you agree those are the four things at issue here, the pre-start meetings, the 15-minute meetings at the beginning of each day, the disciplinary sessions, the picnic, and the forklift training, which seem to be the things that are at issue here. Those are the four things at issue. And I have no doubt that there's evidence to support your position those are not essential job functions. But that's not really the question. The question is, in this record, is there also indications that they are important or essential to employment? Well, they're certainly not essential job functions. But here, if you understand the way that the disciplines are issued and what they were issued for with particular regard to the appellant, here the only disciplines that Mr. Beasley received were for time and attendance infractions. You came to work, you clocked in late two times last week. Or you called out, you didn't show up for work and didn't call in within two hours. Things of that nature. Things that are fairly simple. And these are written, detailed disciplinary notices that the employee receives. They're a page or two or maybe three pages long. Generally they attach the time clock statement so that they're verified as to... But the way I understand it works is at some point you sit down with your supervisor and your supervisor talks to you about what the issue is, right? And if I could just follow up, I understand, correct me if I'm wrong, isn't there a portion of the record where the appellant says, I thought I was approved to go out on this leave. And so wouldn't that be the disciplinary session after that? I mean, doesn't that require more than just a piece of paper? Doesn't that require some explanation of saying, well, you thought you were approved but it Well, I'll say one thing that's perhaps been overlooked is at the outset of Mr. Beasley's employment with O'Reilly, we sat down with him. He was hired for the job that he sought, which was this inbound material handler position. We engaged in an interactive process with him in order to identify what is an accommodation that he needed, a reasonable accommodation, to allow him to be successful and to perform the essential functions of the job. He was allowed an exception to the warehouse's policy of no cell phones. Employees within O'Reilly's distribution center have to check their cell phones in. But counsel, there are two things. One is that same counseling, or that same interactive session at the beginning, also said that if you request an accommodation, a sign language interpreter, that we will do our best to provide one. He did, as I understand the record, request one with regard to exactly the meeting that Judge Brasher is talking about. And in addition, it would seem that texting back and forth would not be, at least with this, a really sufficient way to coach someone up with, hey, let's be a better employee. I mean, the part of this is we don't want to fire people. It's hard to train good people, right? You go through the trouble of getting someone and working there for two years. You want to train them to get better and to not have these issues. So that would seem to be an ineffective way to do that, would it not? I would say, number one, the record shows that on a number of instances of collateral issues such as payroll, such as Mr. Beasley seeking a day shift position instead of a night shift position, Mr. Beasley did utilize that reasonable accommodation, the use of a cell phone, in order to interact with HR personnel relative to those types of issues. Also in regard to the July 2017 vacation and him being written up for that particular issue in conjunction with a second time and attendance violation that he also incurred in July where he called out of work, the testimony in the record is actually fairly less definitive than the outline Mr. Beasley was asked in his deposition also of when exactly he requested an interpreter relative to that discipline. And he indicated, well, it was sometime between July of 2017 and when I resigned in February of 2018. I believe in this Court's opinion in the Donofrio v. Costco, which I believe was issued in 2020, the Court spoke to the specificity or lack thereof of a request for accommodation like that where a plaintiff gave very vague testimony about the time and circumstances. We can talk about that and I'll bring that up with your opposing counsel when he comes back up here. But with regard to whether this is essential or not, which is where we started here, I'm still having trouble understanding how a genuine issue wouldn't be created where you have some not an essential job function, specifically a listing of what the essential job functions are, and some supervisor testimony which seems to suggest that this really is an important part of our process at O'Reilly and that both sides are expected to participate in this thing. How do we deal with that conflict? Well, A, there's no indication here that somehow the communication concerning the discipline was deficient. By way of example, Mr. Beasley missed his very first night of work. He overslept. Okay. I want to stop you. So whether it's essential or not is different than what you're about to talk about, which is is it the cause of any adverse action for him, which I think where we're headed. But if we can just focus on the essential part, how is that not create a genuine issue of material fact on whether this was an essential component of the job? Well, first of all, the court, granted in an unpublished opinion, has spoke to that issue previously in the Walmart case from 2007, I believe it's Novello versus Walmart, in which an employee requested an interpreter for a termination meeting and brought up not only the essential functions of employment, but the benefits and privileges of employment regulation. And the court there determined that essentially that this... Yeah, but that was unpublished. And that was the meeting at which he was terminated, right? So I mean, that seems distinguishable from this situation where we're talking about meetings that are trying to keep him employed, in particular meeting that, you know, I mean, I guess you would agree that showing up is an essential function of the job, right? I mean, you can't do the warehouse job without being there. And so it seems like the meeting at which you're counseling him how to go about the I don't know if it is a central function, but it just seems like it's more related than certainly in Novello, where it's just, this is the end. It's not simply a meeting, it is a written discipline that the employee receives signs and it solicits feedback or a response from the employee if they care to provide one. When a response was not provided by Mr. Beasley in this instance, or in any of the disciplinary instances, the tardiness and absentee issues were admitted by Mr. Beasley. So, you know, I'll go back to Holly, which I know you rely on heavily. And Holly, a different part of it than goes to the causation issue, the footnote 17 issue. But we said that when considering the employer's judgment regarding what is an essential function, we have previously considered not only the company's official position, in quotes, but also the testimony from the plaintiff's supervisor. And so looking at the plaintiff's supervisor here, it's hard for me to say where the supervisor says this is important, this is what we do, this is where we coach him up to try to correct the behavior so that we can have a good employee going forward. How that's not part of the essential functions of what happens with O'Reilly, as opposed to a different company that might handle it differently. Sure. And a factual distinction in the Holly case is there you had a gentleman who was a paraplegic and he was employed as a mold polisher. Right. And he had issues with getting to work on time that were specifically related to his disability. In fact, there was no dispute about that. Here there's no contention and no evidence that Mr. Beasley's issues with punctuality or with attendance are in any way related to... Yeah, but that's not... The issue isn't the attendance, it's the disciplinary part. And that is related to his disability of being able to understand what's going on here. But, okay. I think we've run that to the ground. You were about to head to something else, which is this didn't really have an effect on something. Were you going to make a causation point with regard to this? Well, I think with regard to the statute that both you and Judge Brasher asked about previously, with regard to the reasonable accommodation claim, and this court's precedent in a number of cases, Your Honor, have both identified some of those, has indicated that it is... Reasonable accommodation is required only if it allows the employee to fulfill... Yeah. So what do you say about the EEOC's point, which I found their amicus brief to be very helpful, that those cases were about the question of whether someone was really eligible for the job at all, could do the job, and an employer said, look, we can't come up with an accommodation that's good enough to allow you to do the job. So you could think of, for example, a paraplegic person who's having to restock shelves at a high level. We can't think of something that would make you eligible. Whereas here, we know we can do the job, and he's just saying, I need a reasonable accommodation because I can't get, under the terms of the statute, the privileges of employment. The statute tells me I have the right to privileges of employment, and I can't get that without a reasonable accommodation. So isn't this just a different case than those cases? Well, this is a different case than those cases, but it's really a question foremost of statutory construction. When you look at the prime statute of the ADA, 42 U.S.C. 12.112a, it is made up of two clauses. There is what would be called the discrimination clause, no covered entity shall discriminate against a qualified individual on the basis of disability, and if Congress had stopped there, then that would be fine, and we would deal with that, but Congress went further and added what would be called the in regard to clause. In regard to job application procedures, the hiring advancement or discharge of employees, employee compensation, job training, and the other terms, conditions, and privileges of employment. Can I say something? How does that help you? In other words, that specifically mentions job training, and one of the things that your opposing counsel helpfully said was not essential was a job training, was the forklift training. So how is the failure to accommodate where he said, I asked for a sign language interpreter and didn't get one for a job training, not bad for you, even if we read it the way you want us to read it? There's no evidence that, in fact, forklift duties was a part of the essential functions of the inbound material handler. But that statute, you're talking about the in regard of language, and that doesn't refer to essential functions. That refers to job training, in regard to job trainings. Right, but it also talks about a qualified individual in the discrimination clause, and a qualified individual has a specific meaning under the statute that relates to an individual who, with or without reasonable accommodation, can perform the job training. You regularly train people for things that aren't essential for their job? The record is entirely silent on that. Right. And I'll also indicate, O'Reilly's records, we have no indication that any accommodation was ever requested. In fact, I believe the plaintiff in his testimony said, I don't know if the supervisor, I don't know if he heard me or not. It was made a request that by his, that he says he asked for during the 1 a.m. to 4 a.m. or 5 a.m. shift. He never made the request a second time. He never utilized his cell phone to text or email. Can I ask you, can I ask you before you close to sit down, just address this hypothetical which has been bothering me. So let's say that I work at a law firm. I'm a disabled person. I'm in a wheelchair and I work at a law firm. And the law firm has this like great break room, lunch room area where like all the associates and partners go and they hang out and they get free coffee and, you know, all sorts of great stuff in this break room area, but it's up a set of stairs and so I can't get to it. I'm a great lawyer. I do my law firm job fine, but I can't participate in this great break room that they have. Can I make a claim under the ADA, under your reading of the statute for that? I think the court would have to make a determination at that point under that statute. Assume I'm on the court and I want to make a determination about it and tell me what the right answer is. Well, I think it would depend upon the particulars and maybe the interactions that go on that break room with co-workers and discussion of cases and... My counsel, why wouldn't that be a privilege of employment even if they just talked about sports? It could possibly be a privilege of employment. However, I believe that would go back to the statutory in regards to provision of 12112A and it would have to fit, your Honor, under the terms, conditions and privileges of employment which this court, I believe, has in shorthand fashion labeled the adverse employment action as that requirement exists. Not only in ADA, isn't your answer to Judge Brasher's question that you have to say it's not an essential function of the job and our case law, as you read it in Lachance and Lucas, say that you only need to be accommodated as to the essential functions of the job. Doesn't that have to be your answer? It would be not required as an essential function of the job. I do agree with that. You would have to, I mean, to bring that claim, the disabled individual under your reading of our case law would have to say, look, essential functions of the job occur in this break room. You know, I don't know why, I mean, this would be inconceivable that they would have to somehow link the access to this privilege to an essential function of the job. That's your position. The privilege language only comes out of the departmental regulation. No, it's in the statute, privileges of employment. I'm sorry. I was thinking of a different thing. You're talking about, what we want to separate is the causation element, the adverse employment action element, which would be the denial of a privilege. And I have to agree with my colleagues that in that hypothetical, the break room would be a privilege of employment. From what you're saying is the issue of the second prong, which is that the accommodation has to go to or only must go to a essential function of the job. Those are different, according to you. They are different, Your Honor. They are different. Okay. Judge Carnes, anything else? No, but I don't really understand why is privileges of employment there if it only, if it has to be interpreted as meaningless unless the accommodation goes to an essential function? When is a privilege an essential function that the employee is expected to fulfill? Your Honor, I don't know that a privilege is ever an essential function here. It is the same statutory language in the ADA at the tail of that statute as is contained in Title VII at 42 U.S.C. 2000-2. And Title VII has typically been interpreted to contain this adverse employment action requirement just as we contend the ADA should be construed similarly. But counsel, Judge Carnes' question is this, I think, and I'm very reluctant to speak for him. But I believe his question is this, and it's a question that I have as well, which is how can we on the one hand say that to meet the qualified individual, the accommodation can only go to an essential function, and then have as one of the causation elements, one of the adverse employment action elements, privileges of employment? Because if it's not essential, it generally will not be considered as a privilege as you yourself have conceded. Why have that in the statute? I think that's the question that he's asking. It doesn't make sense to require on the one hand essential functions, and on the other hand that there must be an adverse action with regard to something that it can never be an adverse action for. Sure. And the essential... Judge, I hope I phrased it okay. The essential function goes to the qualified individual requirement. Okay? That's the threshold. That's the doorway through which you get to those in regard to actions. I believe that where the statute in regard to the clause spells out those specific employment actions, such as hiring, promotion, things of the like, and then leaves that terms, conditions, and privileges of employment is more of a catch-all for adverse employment actions which may not fall within those particular that are set forth previously. The law generally implies in these federal statutes, there's a Latin maxim, I won't try, but it's called the law will not be concerned with trifles. Layman's terms maybe don't make a federal case out of it. But the fact is across the employment statute spectrum, the federal courts have traditionally found that there has to be some degree of materiality, some degree of material adverse effect in order to have a federal employment clause. Thank you, counsel. First of all, I just want to say, I think Judge Brasher, you hit the nail on head as to why if we just say that accommodations are only to the essential functions and nothing else, that it leads to all these absurd results in terms of where someone who doesn't need an accommodation but has a disability wants to enjoy the benefits and privileges of their employment but they can't do that. Counsel, the answer is, I know we ask those questions and they're interesting ones in that very interesting hypothetical, but the answer is that's separate from what effect the lack of accommodation for an essential job function has. Because if for whatever reason you weren't provided one and nothing happened to you, let's take the discipline. If he didn't get one for discipline, and I tend to think there is a genuine issue of material fact on it being essential, but it had no effect on his employment whatsoever, there was just a negative ding in the file, that didn't affect salary, I know that's on the record here, but that didn't affect salary, didn't affect anything else, didn't affect a privilege of employment, then it is the trifle or de minimis or whatever we've called it where there's no harm, no foul from failing to have provided that. And in this record, we actually point to every single thing that he was denied an accommodation. And I think you have two. I think you have two. But my point is simply, there is a difference between failing to give a reasonable accommodation for an essential job function and then the causation element of what effect that doing so has. And involving a deaf person who's denied an interpreter, the effect is that they're excluded, they're not being able to participate, everyone is talking around them and they're going through these trainings, these meetings, and they're not fully understanding what is going on, which is a denial of being able to communicate with your supervisors, with your bosses, with your colleagues, is a privilege of employment. And when you're deaf and you don't get provided an interpreter, you're denied that privilege to be able to communicate with your employer. And that's why, if you look at every other circuit, and you look at Ex Re Stoli in the Tenth Circuit, where they actually do a sweep of every single circuit in this case, and they say, and they agree with our position, en banc, and they even say the Eleventh Circuit, based on the Tenth Circuit's reading, does not require adverse action, and also that you don't need it only for the essential functions of the job. We didn't really get to that, the causation element. I have to say my reading of Holly is not consistent with how the Tenth Circuit sees us. I think Holly does require it, but I think you may have met it here based on the effect on salary. And that's where I'm at. Okay. And, you know, and I think if an employer can just list the essential functions of the job and that is the universe that we're working in, I think that's not what Congress intended with this statute. And so when I say essential functions, being able to communicate about your employment, it may not be in that, you know, list there, but it's an extremely essential part of employment, and so how do we define that is also very important as well, and I think all of these, the trainings, the communication with supervisors, everything else, are part of those essential parts of the job. Thank you. Thank you. Thank you, counsel. We'll move to our next.